Please the court. I'm James Felsman, representing AlohaCare. The case, while you're searching for your documents, I may have moved too quickly to get to the podium, involves the federal Medicaid program and a challenge by an entity that has been a long-time contractor in that to or with respect to a contract that was not awarded to it. This is really just a disappointed bidder suit, isn't it? It is not, Your Honor. It is a disappointed bidder case if you want to accept the notion that a disappointed bidder case involves a circumstance where the only entity that bid that was legally eligible under federal law lost the bid to entities that were ineligible. If that's a disappointed bidder case, then we have a disappointed bidder case. If you look at it the way we look at it, which is we were the only game in town, and if anybody was legally entitled to the contract we were, otherwise no one was, I don't think it's really a disappointed bidder matter. Why isn't no one was a perfectly fine answer? I'm sorry, Your Honor. Why isn't no one was a perfectly fine answer? No one is entitled to the contract. If anybody was entitled to the contract, it was your client. But the alternative answer is no one was entitled to the contract. If no one's entitled to the contract, if there's a bid and the one eligible entity that applies is unsuccessful, then your argument is that no one's entitled to the contract because they couldn't achieve bid standards competitively against entities that weren't entitled to the award in the first instance. I'm having trouble responding with a yes or no. I can tell. I understand. If no one's entitled to the contract, nobody has an entitlement to get the contract. Your client didn't and they didn't. The award was made to other people. If your client doesn't have an entitlement, what claim, what standing, what beef does your client have to complain about the fact that somebody else got it? Your Honor, if you think about it in the following way, I think I can make the entitlement reasonably clear. If there's a federal government job and the job qualifications are specified and ten people apply, the three top people on the list are interviewed and so forth and one gets it. And it turns out nine of the ten had no qualifications, could not get the job based on what the standards were. The fellow who has the qualifications, who applies, doesn't get hired. Does he not have a right to claim the job? No. No. You're talking about federal personnel? You can have a vacancy announcement and the agency can simply choose not to hire at that time, to turn down all ten applicants and say, you know, one is qualified, more than one is qualified. We don't like any of these people. We're not going to hire anybody at this point. You can do that. If that were... Sorry. We're on the same page, right, on that? You don't disagree with that? No. Okay. So... I'm on the same page. Yes, I'm sorry, Your Honor. If we stop right there, I'm on the same page. Well, that's what I was asking. I wasn't asking are you going to be on the same page with the next question I ask. Do you have a next question? I mean, you don't know what the next question is. I don't. So I can't probably get you to commit to agree with me on that. Right? So I'm only asking you about things past. So far, we're on the same page. Correct. Ten people apply. One is eligible. The agency decides. Nobody gets the job. The devil is everybody. We don't like them all. Whatever. We want to do away with the job. We want to leave it vacant. We don't like that one person qualifies. We just, you know, that's not suitable for us. And we're not going to fill it. We're going to do another announcement maybe down the road. Okay. There's no entitlement to that job. No one can come in and say, I qualified. No one else qualified. I get the job. Right? Correct. Well, I don't see how that is changed if the job is given to somebody else. The agency may, in fact, be wrong in giving the job to the other person. They may have made a mistake. But how does the one person who didn't get the job, who might have been qualified, have any standing to complain about that? I've never heard of that. I mean, you wanted to find an analogy as to the job. I've never heard anybody being able to complain that somebody else got the job. I mean, I've heard people complain, look, you discriminated against me. I didn't get the job because of sex or race or, you know, there's some illegal reason why I did, you know, some illegal motive for my not getting the job. But I've never heard of a case where somebody says, I'm complaining because somebody else got the job. Actually... Do you have a case like that? Or a case where... You mean where there's a case where the party who didn't get the job, who's claiming eligibility, has no evidence of some sort of impropriety or manipulation in order to keep that person out of the job, save for the fact that the people who got the job are ineligible and this guy is eligible? Boy, that's a complicated way of putting it. You can claim, if you don't get the job, whether somebody else was eligible or not, you can claim a violation of, let's say, Title VII. I didn't get the job because I'm female. I didn't get the job because I am, you know, black or, you know, Chinese or something like that. You can make that claim whether the job was filled or whether the job was not filled. If you didn't get it, you can make a claim of illegality under certain laws, most notably Title VII. But I've never heard of somebody being able to say, I don't have that kind of claim, but what I'm complaining about is somebody else got the job. I've just never heard of a case like that. I don't see you want to use an analogy. I am, you know, I... No, no, no, no, but the analogy didn't stop with the notion that you're the only guy in town. The analogy was simply, I'm the only guy in town, I'd like the contract. Or I'm the only guy in town, I'd like the job. The question then becomes, doesn't the agency, even going back to your hypothetical, have to say, you know what, Jim, you're right, we're just going to cancel the whole thing, but by the way, we're going to cancel the whole thing because we don't want you to have the job either. We don't think you measure up. In other words, Your Honor, if you set up a competition of some sort and you say, here are ten people and we like these three better for whatever reason and we don't like these guys, but it turns out you who are legally eligible, who Congress has for years and years and years and years, especially to find your eligibility, has merged your eligibility because you're a freak of nature into, in effect, a patient protection because the entities to whom it's conveying eligibility are entirely creatures of the United States Congress. They run programs for the poor. Those people can either become HMO-like entities or form with others. Patient boards dominate those entities. Those entities are controlled by patients and survive and live and serve to help those patients. Those patients include large numbers of Medicaid patients and large numbers of the ABD population. If you put all that together in Congress, especially endows you with an eligibility opportunity, let's not call it a right, it's too loaded, an eligibility opportunity when, by any stretch of the commercial imagination, you wouldn't be otherwise eligible. And then you apply and a bunch of other folks apply. You set forth criteria that is not favorable to this eligibility. You pick people who aren't eligible at all. Do you really have a situation where the entity that has been designated specially by Congress as a matter of law to be eligible simply walks away? That's the end of the matter. The state goes off and continues contracts with entities that are ineligible. And the entity that's eligible has no challenge to say, wait a second, we're the guys who should get the contract. The state, to my knowledge, hasn't said, if we won this case, it would be a hot zone everybody. No judicial challenge. I mean, you can go to Congress. You can complain to your senator, your Congress people. You can complain to the agency. The question is whether you have standing to raise a judicial challenge. That's all we talk about. I understand your complaint. We don't talk about whether it's right or wrong or whether it's, you know, there are other remedies available through the political process. The question is, do you have a judicial remedy? And I don't see, unless you're shown a document to that contract, you are, I don't see where you can come to court and complain about the fact that somebody else got it. We could not come into court and say that there's a sequence of events here where there's a clear, where there's a clear, absolute positive eligibility conveyed by Congress to a particular entity. There is a procurement that takes place where entities not eligible receive the contract. Our eligibility is in effect, in effect at that point, denied. For whatever reason, it's denied. And we would not, at least under independent living, have a right to say, state operations here were preempted by federal law, federal law says we're eligible and they're not. Let me stop you right there. Yes. You are now making this supremacy argument, which you did not make below, and you're asking us to entertain that for the first time on appeal. Generally, we don't do that. I'm sure that you know. And also, too, asking us to, you know, you're asking us to consider standing arguments based on the supremacy clause when you consistently pursued relief under Section 1983 and your complaint. We have to completely rewrite your complaint. It's not in your complaint down below. Actually, Your Honor, I disagree with that in the sense that the complaint is laden with violations of the federal Medicaid statute as to which this Court has had no cognizance but for the fact that it is preemptive law and that has been held time and time and time again. Our whole case was premised on preemptive law. Did you cite the supremacy clause any place in your complaint? I beg your pardon? Did you cite the supremacy clause any place in your complaint? No. Okay. How is the District Court supposed to know then to look for – did you cite independent living in your brief papers to the District Court? No. Well, how is the District Court supposed to know that then? The District Court was not expected to know that based on what we said.  So this is a new argument on appeal, and you are asking us to take this on? I am not trying to, Your Honor. Yes. We're making a new argument on appeal, and we believe that it is an argument that the Court can hear and decide on appeal. And we believe we fit the tests through which this Court may consider and decide. We also think, by the way, that we have 1983 standing. And I say that because I think what we've shown here is we've shown two things for that purpose. One is we've shown an intention by Congress from the day managed care was approved under the statute and authorized and intent to make us specifically eligible. I think once you bring eligibility down on us in particular where we have absolutely no claim, no basis in the ordinary course of events to ever otherwise get eligible in a conventional commercial sense, you have to say that Congress intends for you, if you apply for the contract, to get it. I think that's really where it comes down. Or, alternatively, that at the very least, when you are eligible and no one else is, there at least at that point is an intent that you get or to put it otherwise. I think eligibility at some point transmutes clear eligibility by happenstance in a circumstance where, by the way, all state law and all state preference otherwise would be to say we don't like them. Who are those guys? They're not insurance companies. We don't want to do business with them. I think what you have is you have a convergence of interest here, legally and practically, which really winds up being all right. In other words, Congress designates you as specially eligible. You apply. You should get the award. Perhaps maybe you shouldn't get the award. Perhaps you could argue if there's some fluke circumstance where there's some other reason for your ineligibility or the nature of the project is such that you couldn't feasibly do it, but there's no fluke circumstance here. And the second reason I think is, and we do make this case, and I think we have a right to make it, and I think it's supported by the statute, is we are infused with a protective obligation under our federal grant, which is I think incorporated into Medicaid to act in the best interest of our patients and literally to be their representatives as to health care. So you start with an entity that gets a grant. That entity is transposed into the Medicaid program as not just a provider of right. FQHC services are mandatory. They have to be provided. Special payment rights. Then 1976 managed care legislation. Health centers are automatically eligible for that, albeit 1976 and before. Ten years later, they're automatically eligible if they've had three years of $100,000 grant funding. They're automatically eligible, and in history we have CMS's predecessor saying that includes collectives of centers. And then we have a new statute specifically authorizing this and saying you even qualify as a managed care organization. But every single decision going forward on this center's part to start, to operate, to expand into managed care, to join others, ultimately traces back to patient control and patient protection. So I think we also have a basis to argue we have standing to protect our enrollees from entities A, that are ineligible, and B, are different than what would benefit them most as Congress has suggested in legislative history, which is a community health center umbrella. My time's up. So I'll sit unless there are any questions. Thank you. Thank you. Good morning, Your Honors. May it please the Court, my name is Charles Miller, and I'm speaking today on behalf of the Department of Human Services of the State of Hawaii. I think I understand the argument being made, Judge Bivey, that in fact the contention is that they do have a right to win. And I think we've pointed out in our brief that there's nothing in the statute that gives this entity, Aloha Care, a right to win a contract. Do you agree with the claim that this is, with my suggestion that this is largely a disappointed bidder? I do indeed. We argued it. And there are statutes in the U.S. Code that do provide for mechanisms for disappointed bidders to challenge a bid. There are certain, in the federal system, that's quite right. But I haven't heard any statutes in these applicable, in this code that are titled that would allow an entity such as Aloha Care to do that. There apparently were mechanisms within the State of Hawaii that allowed them to challenge that. I was going to point that out. Not only were there mechanisms, they were invoked. The award was challenged in the state system. It went through several layers of administrative review, all of which resulted in the awards being upheld and the Aloha Care objections being denied. I believe they've taken an appeal in the state court system, which is pending. They've also challenged the qualifications of the winning bidders before the insurance commissioner. That case is not finally decided, but has been referred to a hearing officer, which has recently issued a decision which rejected the Aloha Care contentions. We await a final ruling by the insurance commissioner on that. So they've used. Those are all based on the state law grounds for them not getting the contract, the deficiencies they found in complying with state law. That's true, Your Honor. In the federal statute, none of those considers the question of eligibility or ineligibility of this bidder versus other bidders as a matter of federal law. Well, I think it does. And the reason is that for purposes of licensing and eligibility, federal law yields to state law. In other words, the federal law is that the entity be properly licensed under state law. That's the federal provision. That's the provision that Aloha Care contends was not met. That's the determination that the insurance commissioner has been asked to make. The issue is that some of the other bidders didn't yet have a license, but it was pending. That's part of the argument as to one of the two. All that was presented to the hearing officer who issued his decision several days ago. Now, we have a difficult interplay between state and federal regulation here. We hadn't heard the United States is not a party to this case. Is this the kind of case where it would be appropriate to see whether the Justice Department has a view and ask for the views of the United States on this? I know the Solicitor General spoke to us at the Judicial Conference a year or so ago. And this was a different Solicitor General than is now in office. But he expressed the view that we ought to be more willing or aggressive in asking for the views of the United States in cases where the interests of the United States are implicated, even though the United States is not a party. Do you think this would be the kind of case where we should abate ourselves in that possibility? I don't think this case is an appropriate case for that, nor is it necessary, for two reasons. First, the United States has been intimately involved in this whole project. This project is undertaken under authorization for a waiver demonstration project, which its commencement depended upon approval of the agency CMS here before services could begin. And that approval was given. So the United States has essentially spoken on this. Further, the second reason is that there's another case pending now in the district court brought on behalf of beneficiaries of the program, making essentially the same arguments that ALOHA Care makes. And it has been brought against both the federal defendants, CMS, as well as the state. And two different cases were filed. They've been consolidated into a single case now. And that case pens before Judge Kaye. So the views of the United States will be expressed in that case on the issues that are also the ones that are presented here. Is that different from the one that was just provided to us by the state? That is the same case, Your Honor. Judge Kaye has just issued a long decision. A long decision acting on motions to dismiss. Okay. Does that resolve the case, or is the case still? Not entirely. He dismissed most of the claims, but not all of the claims. And he did not dismiss the claims against the federal defendant. So what is before Judge Kaye now is a review under the Administrative Procedure Act of the decision of the federal government to approve the contracts that allow this program to go forward. I understand Judge Kaye did address the supremacy clause argument here. He did. And I suppose that this case will be subject to a subsequent appeal. Well, it certainly could be. So far, every case that has been decided has been appealed. So no reason to think that one wouldn't be, too. I don't mean to presume anything here, but if we prevail, I would assume that the plaintiffs would appeal. Well, I'm a little puzzled on this. Will what we rule here control what happens in that case? What you rule here, Your Honor, would probably not control that case because the party here is not a beneficiary. The party here is a provider of service or, in this case, a would-be provider, a bidder for a contract. And Judge Molaway's holding, which you're reviewing, is essentially limited to whether the statute provides a right of action to that type of entity. But they're asking for associational standing, right? They are. They are asking for associational standing. But Judge Molaway, she wasn't asked for associational standing. She was asked for third-party standing. There are some differences there. She denied that. And if you affirm that, I don't think that would constitute a decision on the merits of the beneficiary's claim. Rather, I think it's a decision that this plaintiff is not entitled to advance their contentions. What if we go the other way? Well, if you go the other way and hold that they do have standing to raise the issue of benefits, then I presume the case would be remanded. What effect would that have on another case? That's hard to say because then you would have three cases pending. They're not two. That would be the third case pending, raising similar issues. They're all pending in the district court. The third one is on appeal to this court. But I don't know that it would have any dispositive effect on any pending case. However, because the cases are now pending before Judge Paye brought on behalf of beneficiaries to raise pretty much the same issues that are raised in this case, there isn't really any purpose to be served by affording third-party standing to this plaintiff, nor is there any legal basis for it because, as evidenced by these other cases, the beneficiaries are certainly capable of defending their own interests and are doing so. And I think I'd just simply add the point that, as Judge Mulway said, this plaintiff and the interests of the beneficiaries are not the same. They're, in many ways, conflicting. Are we in a position to make that determination as to whether they are or not based on – I mean, this is not something that was developed in the district court. There is an intervening case from our court that arguably preserves the issue for them, even though it wasn't raised below since it's an intervening authority. And this is some of the facts for determination, how the – as to whether or not the beneficiaries are able to assert their own claims. Can we make that determination here on appeal? Well, whatever claims – Wouldn't we have to send it back and have the district court decide that? I don't see what purpose that would serve, nor is that necessary. If I understand the question, Judge Krasinski, the beneficiaries' rights will be determined in the cases that are now pending before Judge Kaye, and whatever they turn out to be is what they will be. I don't know that remanding this case will add anything to that. What if they do a lousy job? Pardon me? What if they do a lousy job? What if they do a lousy job? Yeah. I mean, essentially what we're saying is you can't have third parties standing because there are not adequate other people to raise a claim. So you don't have to raise it for them because they are. But we don't know anything about what kind of adequate representation there are in these other cases. They're not before us. We haven't studied their arguments. What if it turns out, I mean, we can sort of guess that they have, you know, they're doing an adequate job, but, you know, we've all seen cases where parties have done a poor job or less than an adequate job. So is that something we can determine without sort of a factual finding? I suppose you can never know that whenever a third party standing claim is met. That's why we have trial courts. Pardon me? That's why we have trial courts. You know, they take evidence. You know what they do? You know, witnesses. People raise their right hand and swear. We never like to see stuff like that. I'm just saying, it gets back to my basic question. We want to make sure that the cases are decided consistently and you say, well, don't worry about it because the United States, the view of the United States is represented in these other cases. But, you know, I'm just wondering whether by the time these other cases get to us, what we do here won't have pretermited whatever the United States has to say in those other cases. Well, I don't have any fear of what the United States would say if its views were sought in this case. I simply suggested that it wasn't necessary to do so, but I certainly have no problem with it. I don't have any doubt of what they will tell you. If that would give the court a feeling of security, I would say do it. I wanted to make just two quick points in response to earlier questions that were raised. Judge Bybee, you asked about the questions, is there any authority anywhere for this plaintiff to seek review in the federal system or under federal law of the award of a contract? I noticed in the reply brief that the plaintiff or the appellant cited a federal regulation, Part 74 in CFR 45, and purported to draw from that citation a claimed right of review of contract awards. This was the first time I think I've seen that citation. We obviously didn't address it at any time prior to this. I just wanted to point out that I don't think you'll have any difficulty with disposing of that contention, but in fact Part 74 does not even apply to this program. There is another set of rules contained in Part 92 of 45 CFR, which was adopted in 1988 and is applicable to state programs, and in 2003, and I'll give you the citation in a moment, that right was extended to cover open-ended entitlement programs like Medicaid, and in lieu of being covered under Part 74, the citation is 68 Federal Register 52843. The importance of this is that one of the significant changes made in Part 92 was to the very provisions that counsel cited in his brief, those related to procurements, and the provision in Part 92 with respect to procurements specifically says states, state entities, when they issue contracts will be governed entirely by their own procurement laws. It then goes on to say all other grantees subject to Part 92 will be subject to a series of rules that are similar to those that were cited in the appellant's brief. So even that last-minute citation does not provide any basis for review in federal court of the award of a contract or the failure to award of a contract. I'll just say one other thing concerning the Supremacy Clause argument. I think the appellant has sort of missed the boat on this whole issue. It's true that they didn't raise it below, and that's a sufficient reason to dismiss the point, but even if the court were to consider it, the fact of the matter is that there is no preemption in this case because the plaintiffs or the appellants have advanced nothing that would be preempted. Preemption involves determining that some state law, and it can be more than a statute, it could be a state common law, it could be a state regulation, but some state law in a generic sense has been preempted by a federal law because of inconsistency or otherwise. There is no such state law in this case. Everything that's being done in this case has been done under federal law with the exception of the licensing, which is done under state law because federal law says that's the law that applies. And the appellants have never cited any state law that is in conflict here with the federal law. In fact, their reply brief goes out of the way to say there is no such law. In an attempt to distinguish the Guzman case of this court, which was decided a year or two ago, and which made the point I've made, the brief says, well, the difference between our case and Guzman is that Guzman involved preemption of a state law, whereas here, and I'm quoting now, we have a straight violation of the Medicaid statute's federal law requirements. Well, that's not a Supremacy Clause case. There's no preemption there. It's a 1983 case, and I think we've adequately shown that there's no basis for jurisdiction for this plaintiff under Section 1983. Thank you very much, Your Honor. Thank you. Would you like to take a minute for rebuttal? As to Part 74, it's cited in the managed care regulations issued in 1992 and unamended. And it does say that for purposes of cited, excuse me, and just for the reference, 438.50, it's not waived under the waiver here, so it remains intact. It is a reference. If you go to Part 74, it does say you go through the procurement steps and arguments before, in this case, it would be the state. But as to federal arguments, you make them to an appropriate form, and it distinguishes the two. Part 92 simply is silent as to a federal matter. I don't even think they're – I think you can read them as being more or less the same, but it does apply by virtue of a regulation in the Medicaid. I'm sorry. I'm sorry. What does apply? You said it. It does. It is. And what's it referred to? It is. Part 92 or Part 74? Both. I think I was saying it in connection with – in that – the brief time I used it, I think I was saying it in connection with Part 92. But it is really Part 74 that's referenced, and we do get into it. And, by the way, it was raised before Judge Mulway. This was a matter that was raised below. As to a federal law – or, excuse me, as to a preemption and whether there has to be a state law, independent living cites Bud Antle with favor. Bud Antle refers to conduct as well as an overall statutory scheme. It also cites a number of other cases which synthesize the notion of preemption in terms of – in a grant situation in terms of simply a violation of federal law that's being conducted by the state, however. And, after all, everything, in the end, that a state does is under some sort of statutory authorization, assuming the official who's operating is behaving legally under state law. It's all, in effect, under state law. And, finally, Your Honor, it's an interesting suggestion as to bringing in the views of HHS or through the Solicitor General or otherwise. There is a potential here, I think. I think it's remote where a decision by this Court might in some way trample upon the case below. It may be worthwhile calling in the United States. I don't think the United States yet has really focused on this case. And now that there's been a ruling – and when I say this case, by the way, Judge Piety, I'm referring – this case would be the case on which there was just this lengthy ruling by Judge Kaye. I don't think until that ruling the United States has really focused and thought about what's going on and what the implications are. They are not a party or an amicus in the case before Judge Kaye? They are definitely a party before Judge Kaye. Obviously, they've opposed. But I really think that what they've done is they've tried to remain on the periphery and they filed a dismissal motion. I think they were hoping just to get out rather than to be forced to look at the facts and circumstances of the whole matter. Now they will be. So what their position may be once they get a chance to do that, we'll have to wait and see. Thank you, Your Honor. Thank you. The case is argued and submitted. We are adjourned.
judges: Kozinski, Bybee, Callahan